UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| TONY HENDRIX,                )  |  |
|                              )  |  |
|     Plaintiff,      )  |  |
|                              )  |  |
| v.                           )  | Case No. 8:19-CV-01145-T-24-AAS |
|                              )  |  |
| UNITED STATES OF AMERICA,    )  |  |
|                              )  |  |
|     Defendant.     )  |  |

## UNITED STATES' MOTION FOR SUMMARY JUDGMENT

The United States of America moves for summary judgment under Fed. R. Civ. P. 56 because there is no triable issue of material fact and it is entitled to judgment as a matter of law.

This case arises from a car accident in which Plaintiff Tony Hendrix's young nephew entered a roadway in front of a United States Postal Service vehicle driven by USPS City Carrier John Grealish. Plaintiff pushed the child out of the truck's path just in time, but then was hit himself. Plaintiff has sued the United States under the Federal Tort Claims Act (FTCA), alleging that Carrier Grealish was negligent. The undisputed facts and expert opinion show that Carrier Grealish could not have avoided the accident, which means that Plaintiff cannot meet his burden to prove negligence. Plaintiff has given two accounts of how the accident occurred, but the differences are immaterial because the accident was unavoidable under either. Furthermore, even if Plaintiff could prove any negligence, and he cannot, the greater portion of fault

1

belongs to Plaintiff himself for suddenly entering the roadway in front of the USPS vehicle. Therefore, the United States is entitled to summary judgment.

## STATEMENT OF MATERIAL FACTS

1. Plaintiff Tony Hendrix[1] is a twenty-eight year-old resident of Winter Haven, Florida. Exhibit A, Deposition of Tony Hendrix at 5:11-12; 9:4-6.

2. On December 22, 2016, Plaintiff was living with family at 3802 Avenue R NW in Winter Haven. Ex. A, Hendrix Depo. at 10:2-15. Avenue R is a two-lane, paved road with a 25 mile-per-hour speed limit. Exhibit B, Florida Traffic Crash Report; Exhibit C, Deft. Rule 26 Docs. 009.

3. That afternoon, Plaintiff and several family members, including his nephew Bre-Yon, were outside in front of their home. Exhibit D, Standard Form 95. Bre-Yon was four years old. Exhibit E, Deposition of Brandkisha Roundtree at 6:25-7:1.

4. A black pickup truck was parked in the Hendrix family's driveway perpendicular to the road, about 6 feet from the road. Ex. C, Deft. Rule 26 Docs. 009; Ex. A, Hendrix Depo. at 30:19-24. A gold sedan was parked in the yard, parallel to the road. Ex. C, Deft. Rule 26 Docs. 009; Ex. A, Hendrix Depo. at 30:19-24.

5. Bre-Yon was shorter than the bed of the pickup truck. Ex. E, Roundtree Depo. at 28:20-29:1.

6. There was a fence with landscaping along the edge of the Hendrix family's

---

[1] Plaintiff's preferred pronouns have changed over time. In documents and testimony, Plaintiff has been addressed as both female and male at different times. At Plaintiff's deposition, Plaintiff informed the United States that he preferred male pronouns. Therefore, the United States will describe Plaintiff as male throughout this motion for consistency. Regardless of gender, there is no dispute between the parties that Tony Hendrix is the individual involved in the accident at issue here.

property. Ex. A, Hendrix Depo. 44:20-44:8.

7. USPS City Carrier Grealish had completed a package pickup on 42nd Street NW in Winter Haven and was returning to his scheduled route. Exhibit F, Standard Form 91. A power line was down at Avenue Q NW and 42nd Street, so Carrier Grealish diverted on to Avenue R. Exhibit G, Postal Service Form 1769 at Def. RFP Resp. 017; Exhibit H, RIMS Data. It is undisputed that Carrier Grealish was acting within the scope of his employment.

8. Regional Intelligent Mail Servers (RIMS) data from December 22, 2016 showed that Carrier Grealish was traveling at approximately 15 miles per hour while on Avenue R. Ex. G, PS-1769 at Def. RFP Resp. 017; Ex. H.

9. In his administrative claim form and Complaint, Plaintiff alleged that he was watching his nephew when he noticed that Bre-Yon was in the path of an approaching USPS vehicle. Complaint (Dkt. 1) at ¶ 5; Ex. D, SF-95. Plaintiff ran into the street to push the child to safety but was struck by the vehicle himself. Complaint (Dkt. 1) at ¶ 5; Ex. D, SF-95.

10. Two witnesses to the accident concurred that Bre-Yon had run into the road and Plaintiff ran after him to keep Bre-Yon from being hit. Bre-Yon's mother, Brandkisha Roundtree testified that Bre-Yon had taken off running toward the road, and Plaintiff ran after him. Ex. E, Roundtree Depo. at 7:6-8:3. Ariana Bradshaw testified that her uncle Tony Hendrix was running after Bre-Yon to keep him from getting hit by the postal truck. Exhibit I, Deposition of Ariana Bradshaw at 6:16-7:2; *see also* 8:11-9:2.

11. After Plaintiff pushed Bre-Yon out of the path of the truck, the postal truck hit Plaintiff on his left side. Ex. G, PS Form 1769 at Def. RFP Resp. 010; Ex. A, Hendrix Depo. 39:3-5. Plaintiff rolled up into the windshield. Ex. G, PS Form 1769 at Def. RFP Resp. 010. At impact, Plaintiff was approximately at the center line of the street. Ex. A, Hendrix Depo. at 22:7-14. After impact, Plaintiff was thrown into the ditch on the opposite side of the street. Ex. E, Roundtree Depo. at 7:6-8:3.

12. Carrier Grealish immediately stopped the USPS vehicle after hitting Plaintiff, parking approximately ten feet from where the impact occurred. Ex. F, SF-91 at 2; Ex. B, Florida Traffic Crash Report at 2.

13. The Polk County Sheriff's Office responded to the scene, and remained for more than two hours. Ex. B, Florida Traffic Crash Report at 1. The Florida Traffic Crash Report noted that Carrier Grealish was not distracted and his actions at the time did not contribute to the crash. *Id.* at 1. The report listed two witnesses to the accident, Ariana Bradshaw and Brandkisha Roundtree. Ex. B, Florida Traffic Crash Report at 2.

14. Deputy Edwin Alexander reported that Carrier Grealish could not see the child or adult who chased after the child, because the two vehicles parked in the driveway of 3802 Ave. R NW blocked his view. Ex. B, Florida Traffic Crash Report at 2.

15. Deputy Alexander noted that "Tony Hendrix stated his nephew Bre-Yon ran towards the road and started to cross the road. Tony seen the mail carrier coming in his direction and knew the mail carrier could not see Bre-Yon, he ran

after Bre-Yon and pushed him across the roadway, to keep Bre-Yon from getting struck. Tony said he tried to make it across the roadway, but got struck by the mail truck." Ex. B, Florida Traffic Crash Report at 2.

16. Plaintiff had a laceration on his left eyebrow and complained of lower back pain immediately after the accident. Exhibit J, Polk Co. EMS Records at 004-005.

17. Polk County EMS took Plaintiff to Lakeland Regional Medical Center by ambulance. Ex. J, Polk Co. EMS 004-005. At the hospital, Plaintiff was diagnosed with multiple lumbar transverse process fractures and a head laceration. Exhibit K, Expert Report of Michael J. Smith at 1.

18. Plaintiff next sought medical attention four months later in April 2017 with chiropractor Dr. S. Mohammed. Ex. A, Hendrix Depo. 53:22-54:19; Exhibit L, Seminole Orthopedic and Spine Records at 002.

19. Plaintiff saw Dr. Mohammed at least ten more times, but was not sure when he stopped seeing him. Ex. A, Hendrix Depo. 54:20-56:20.

20. Polk County EMS personnel who responded to the scene reported that Plaintiff stated "his nephew was on the street and was about to get struck by the post office vehicle." Plaintiff "ran and pushed his nephew out of the path of the post office vehicle" but Plaintiff was struck instead. Ex. J, Polk Co. EMS at 005. Plaintiff provided a similar account to his medical provider in April 2017. Ex. L, Seminole Ortho. at 004.

21. As part of the Driver Exchange of Information, Carrier Grealish prepared a written statement which reads as follows:

> I was driving east on AVE R when 2 people appeared about 3 feet in
> front of me running across the street. All I could do was jam on the

brakes. Before the vehicle came to a stop, I hit the second person. The young one was already past [sic] me. There was nothing I could do more. More than one person came up to me and said they saw what happened and that it wasn't my fault. By this time, I was so upset I couldn't tell who they were. If it wasn't for the slow speed they both would have been hit.

Exhibit M, Driver Exchange of Information at Def. RFP. Resp. 003.

22. Carrier Grealish has been unavailable during this litigation for medical reasons and he passed away in May 2020.

23. Plaintiff testified at his deposition that the accident did not occur because Bre-Yon had run into the street and Plaintiff had run after him. Ex. A, Hendrix Depo. at 28:24-29:29. Instead, Plaintiff testified that he and his nephew were speed-walking across the street together at the time of the accident. *Id.* at 12:2-13:21; 17:12. When they started across the street, the postal truck was stopped three houses down and that the two had ample time to cross the street. *Id.* at 17:13-18:20; 22:18-23:5; 25:21-28:23; 33:2-10.

24. Plaintiff testified that he was not paying attention to the postal truck as it approached him. Ex. A, Hendrix Depo. at 16:16-25.

25. Witness Xiomara Torres remembered a child in the roadway before the accident, but did not remember what Plaintiff was doing. Exhibit N, Deposition of Xiomara Torres at 12:15-14:6: 28:13-22. Torres also testified that she could not remember details about what Carrier Grealish was doing prior to the accident. *Id.* at 26:25-28:1: 28:23-29:5. Torres testified that Carrier Grealish appeared to have something in his hand prior to the accident. *Id.* at 9:23-11:4; 11:18-12:7; 28:23-29:5.

26. Plaintiff disclosed Dr. Michael J. Smith as a medical expert.  Ex. K, Report of Dr. Michael J. Smith.  Dr. Smith opined that Plaintiff has no permanent injury and that he will not require any future medical treatment.  *Id.*

27. The United States disclosed Dr. William Greenberg as a medical expert.  Exhibit O, Report of William R. Greenberg, M.D. at 2.  Dr. Greenberg, like Dr. Smith, opined that Plaintiff has no permanent injury as a result of this accident.  *Id.*

28. Plaintiff did not disclose an expert on liability.  The United States retained and disclosed Justin Morgan, Ph.D. a human factors expert to analyze the collision.  Exhibit P, Human Factors Analysis Report prepared by Justin F. Morgan, Ph.D.  Dr. Morgan reviewed written discovery, witness statements, and deposition transcripts, as well as conducted a site inspection.  *Id.* at 2-3.

29. The fence and landscaping would have prevented a driver in Carrier Grealish's position from perceiving individuals in the Hendrix family's yard until they were within 20.1 feet of the area of impact.  Ex. P, Morgan Report at 14.

30. The LLV traveled approximately eleven feet from impact to its place of final rest in front of the mailbox.  Ex. P, Morgan Report at 12-13.

31. Based on the distance between the truck parked in the driveway and the roadway, Dr. Morgan opined that a pedestrian would have been visible for approximately 20.1 feet as he or she moved from behind the cabin of the pickup truck to the area of impact.  Ex. P, Morgan Report at 11.

32. Based on Dr. Morgan's analysis, Mr. Hendrix would have been visible for approximately 1.5 seconds to an eastbound driver if he had run from the yard into the road.  Ex. P, Morgan Report at 11.

33. If Mr. Hendrix had run into the street from the yard, based on 1.5 seconds of perception time, braking in avoidance by a normally attentive driver would be expected to begin at impact. Ex. P, Morgan Report at 11.

34. If Mr. Hendrix instead speed-walked into the street from the edge of the road to the area of impact, he would have been visible for approximately 1.5 seconds to an eastbound driver. Ex. P, Morgan Report at 12.

35. If Mr. Hendrix had walked from the edge of the road, based on 1.5 seconds of perception time, braking in avoidance by a normally attentive driver would be expected to begin at impact. Ex. P, Morgan Report at 12.

36. If Mr. Hendrix were walking across the road, he accepted a gap in traffic of 1.5 seconds for him to cross the road without being struck by the USPS vehicle. Ex. P, Morgan Report at 12. Normally attentive pedestrians routinely reject, that is refuse to cross, if gaps in traffic are five seconds or less. *Id.* If Mr. Hendrix were crossing the road with a 1.5-second gap, his behavior was inconsistent was that expected from a normally attentive pedestrian. *Id.*

37. Based on the distance between the area of impact and the area where the postal truck came to rest, Dr. Morgan calculated the impact speed of the truck to be 15.2 mph. Ex. P, Morgan Report at 12-13.

38. Dr. Morgan analyzed the starting position, impact position, and approximate timing described by Mr. Hendrix in his deposition, and concluded that the postal truck was not likely located in the area described by Mr. Hendrix at his deposition. Ex. P, Morgan Report at 13-14. For the truck to have gone from a stop three houses down to the area of impact in time to hit Plaintiff, the postal

truck needed to have averaged 78 miles per hour. *Id.* at 14. To brake to a stop from that speed would require approximately 291 feet of stopping distance. *Id.* Dr. Morgan's opinion is that the truck could not have covered the distance described by Mr. Hendrix while still coming to a stop as shown in scene photographs. *Id.*

39. Dr. Morgan concluded that the accident was unavoidable for a normally attentive driver in Carrier Grealish's position. Ex. P, Morgan Report at 15.

I. **MEMORANDUM OF LAW**

A. **Summary Judgment Standard**

Summary judgment must be entered against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original). Some degree of factual dispute is expected, but to defeat summary judgment, the factual dispute must "affect the outcome of the suit." *Id.* at 248.

B. **The Federal Tort Claims Act**

Plaintiff brings this action under the Federal Tort Claims Act (FTCA), by which the United States waives its sovereign immunity for personal injuries caused by

9

a "negligent or wrongful act or omission" performed by a federal employee while acting within the scope of his or her employment. 28 U.S.C. § 2672.

The FTCA renders the federal government liable in tort as a private person would be under like circumstances. *Foster v. United States,* 858 F. Supp. 1157 (M.D. Fla. 1994); 28 U.S.C. § 2674. The substantive law of the state where a tort occurred applies to torts under the FTCA. *Doe v. United States*, 718 F.2d 1039, 1042 (11th Cir. 1983). Florida substantive law applies here because the subject accident occurred in Winter Haven.

### C. Negligence Actions Under Florida Law

To prevail in a Florida negligence action, a plaintiff must demonstrate that (1) that the defendant owed a duty, or obligation, recognized by the law to the plaintiff; (2) the defendant breached that duty; (3) a reasonably close causal connection between the breach and resulting injury; and (4) actual harm to the plaintiff. *Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007). If a plaintiff establishes each element, then the Court may apportion liability between the parties under the doctrine of comparative negligence. *See Hoffman v. Jones*, 280 So.2d 431, 438 (Fla. 1973). The plaintiff bears the burden of proving fault on the behalf of the defendant by a preponderance of the evidence, and the defendant bears the burden of proving any negligence by the plaintiff by a preponderance of the evidence. *Id.*

The standard of care for negligence actions is reasonable care—"that which a reasonably careful, prudent, and cautious person would use under the circumstances." *Holzworth v. United States,* No. 6:08-cv-1241-ORL-18GJK, 2011 WL 13298555 (M.D. Fla. June 29, 2011) quoting *Foster v. United States,* 858 F. Supp. 1157, 1162 (M.D. Fla.

1994). Florida drivers have a duty to "exercise due care to avoid colliding with any pedestrian … and give warning when necessary and exercise proper precaution upon observing any child or any obviously confused or incapacitated person." Fla. Stat. § 316.130(15). Pedestrians, likewise, have the duty to: "not suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield." Fla. Stat. § 316.130(8). Further, "[e]very pedestrian crossing a roadway at any point other than within a marked crosswalk … shall yield the right-of-way to all vehicles upon the roadway." Fla. Stat. § 316.130(10). Even if a plaintiff can show breach of a defendant's duty, the plaintiff is not entitled to recovery unless the plaintiff can also show causation and damages. *Jeffries v. Amery Leasing, Inc.*, 698 So.2d 368, 370-71 (Fla. 5th DCA 1997).

**ARGUMENT**

The United States is entitled to summary judgment because Plaintiff cannot meet his burden of showing that the United States, through Carrier Grealish, breached a duty to him. Even if he could prove a breach, Plaintiff cannot prove causation, because the accident was unavoidable based on Dr. Morgan's undisputed expert testimony. Finally, even Plaintiff's ability to prove damages is limited, because both sides' experts agree that he suffered no injury here, therefore any damages to which he is entitled are limited to economic damages only. The United States addresses each element in more detail below.

Florida Statute § 316.310(15) establishes a driver's duty to exercise due care to avoid colliding with any pedestrian and exercise proper precaution upon observing any child. Nevertheless, motorists' and pedestrians' rights are reciprocal. As one court

11

summarized, "A motorist is not an insurer of the safety of a pedestrian who thrusts himself into the vehicle's pathway." *Bell v. AA Holiday Rent-A-Car, Inc.*, 304 So.2d 535, 536 (Fla. 3d DCA 1974). For example, in *Preger v. Gomory*, 55 So.2d 541, 542 (Fla. 1951), a driver traveling at a low speed struck and killed a child who apparently darted into traffic from between parked cars. A hedge further obstructed the driver's view, and the driver never saw the child before the accident. *Id.* at 542. The court entered a directed verdict for the defendant, and the Florida Supreme Court affirmed. *Id.* at 544. In *Fernandez v. Kaba*, 360 So.2d 34 (Fla. 3d DCA 1978), *cert. denied*, 367 So.2d 1123 (Fla. 1979), an adult pedestrian rushed into traffic from between two parked cars and was hit. The driver testified that he applied his brakes as soon as he saw the plaintiff, but could avoid the accident. *Id.* at 34. The court affirmed summary judgment for the driver. *Id.* Similarly, the court affirmed summary judgment in *Applegate v. Holland*, 177 So.2d 46 (Fla. 2d DCA 1965), in which a driver struck a 12-year-old boy who had gotten out of another vehicle and run across the highway. The court found that there was no evidence that the defendant was negligent or that he could have avoided the accident. *Id.* at 47. Here, as in *Preger, Fernandez* and *Applegate*, Carrier Grealish could not have avoided the accident. With the parked cars, fence, and hedges, it was too late for Carrier Grealish to stop in time after he saw Bre-Yon and Plaintiff.

Even if a plaintiff can show some breach by a defendant, the Court must still enter summary judgment for the defendant if the breach did not cause the accident. In *Giter v. United States*, No. 3:08-cv-622-J-MCR, 2010 WL 375929 (M.D. Fla. Jan. 25, 2010), the defendant had been distracted by a vehicle behind him and had failed to

look where he was going for a full three seconds. *Id.* at *6. While the Court concluded that the defendant had breached his statutory duty to keep a proper lookout, it nevertheless entered summary judgment for the defendant because the plaintiff failed to show that the breach of the lookout duty caused the accident. *Id.* at *6. Defendant's expert, whose testimony was not challenged, concluded that the defendant would have needed 4.9 seconds to avoid the accident, and, even if he had been maintaining a proper lookout for 3 seconds, he still could not have stopped quickly enough to have avoided the accident. *Id.*

Here, one witness testified at her deposition that Carrier Grealish had something in his hand and was looking down before the accident. Ex. N, Torres Depo. at 9:23-11:4; 11:18-12:7; 28:23-29:5. The United States disputes that Carrier Grealish did in fact have something in his hand, as there are no such references in the contemporaneous records of the accident, but for the purposes of this motion considers Ms. Torres's testimony in the light most favorable to Plaintiff. As in *Giter*, even if Plaintiff could prove that by looking down or holding an object, Carrier Grealish breached his duty to Plaintiff, Plaintiff still cannot prove that such a breach caused the accident. Based on the brief time that Bre-Yon and Plaintiff were visible, under either version of the facts, the accident was unavoidable. As in *Giter*, the Court should enter summary judgment for the United States on causation.

Even if Plaintiff could prove breach of a duty and causation, and he cannot, Plaintiff cannot prove damages, with the possible exception of medical expenses from the accident. Both sides' experts agree that Plaintiff suffered no permanent injury from the accident. *See* Ex. K; Ex. O. Florida Statute § 627.737(2)(b) establishes that a

13

plaintiff may recover damages in tort for pain, suffering, mental anguish, and inconvenience (noneconomic damages) from a motor vehicle accident only in the event of significant and permanent loss of an important bodily function, permanent injury within a reasonable degree of medical probability, significant and permanent scarring or disfigurement, or death. Because the undisputed medical evidence shows that Plaintiff has none of these, he could not meet his burden at trial as to non-economic damages.

Going a step further, assuming that Plaintiff could show a duty, breach, causation, and damages on the United States' part, this Court should enter summary judgment for the United States for the separate reason that Hendrix's negligence outweighs any on behalf of Carrier Grealish. Under comparative negligence, contributory negligence is no longer a complete bar to recovery, and the Court must apportion fault to both parties. *See Hoffman*, 280 So.2d at 431. If Hendrix had not darted into the street or alternatively attempted to cross with insufficient time to do so, he would not have been struck by the USPS vehicle. Even if the Court should find that Carrier Grealish was partially responsible for the accident, it should nevertheless apportion greater fault to Mr. Hendrix. The United States is entitled to summary judgment.

WHEREFORE, the United States respectfully requests that the Court enter summary judgment in its favor, as well as all further just and appropriate relief.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By:   */s/ Mamie V. Wise*
MAMIE V. WISE
Assistant United States Attorney
Florida Bar No. 65570
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone: 813-274-6000
Facsimile: 813-274-6200
E-mail: mamie.wise@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on September 1, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will serve all registered users in this case.

*/s/Mamie V. Wise*
MAMIE V. WISE
Assistant United States Attorney