UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TONY HENDRIX,

    Plaintiff,

v.

                                             Case No.: 8:19-cv-1145-SCB-AAS

UNITED STATES OF AMERICA,

    Defendant.

_____/

**ORDER**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

    This cause came before the Court on a two-day non-jury trial, which took place on April 26 – 27, 2021. Plaintiff Tony Hendrix brought this lawsuit against Defendant United States of America after he was hit by a U.S. Postal Service ("USPS") truck in front of his parents' house. The USPS truck was being driven by USPS Carrier, John Grealish, who died after (and unrelated to) this accident.

    The central issue in this case is whether Grealish, who was acting within the scope of his employment with the USPS, was negligent and caused this accident. Plaintiff contends that Grealish was negligent, because he was speeding and/or was distracted by his cell phone. Defendant contends that Grealish was not negligent, and instead, this was an unfortunate accident that Grealish could not avoid.

1

The Court has jurisdiction over this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680. The Court heard testimony from the following witnesses: Plaintiff, Brandkisha Roundtree (Breyon's mother), Yvonne Hendrix (Plaintiff's mother), William Hendrix (Plaintiff's father), Dr. William Greenberg (Defendant's medical expert), Brian Cox (who was the manager of customer service for Grealish's post office at the time of the accident), Deputy Edwin Alexander (the police deputy that responded to the accident), and Dr. Justin Morgan (Defendant's human factors expert and accident reconstruction expert). The Court also read the deposition testimony of Ariana Bradshaw (Plaintiff's niece) and Xiomara Torres (the neighbor that lived across the street in front of Plaintiff's parents' house). As explained below, the Court finds in favor of Defendant on Plaintiff's negligence claim

## FINDINGS OF FACT

**The Accident**

1. On December 22, 2016, Plaintiff was living at his parents' house, located at 3802 Avenue R NW in Winter Haven, Florida. Avenue R is a two-lane, paved road with a 25 mile per hour speed limit. That afternoon, Plaintiff and several family members, including his young nephew, Breyon,[1] were outside in the front yard

---

[1] Breyon's mother, Brandkisha Roundtree, testified at the trial that Breyon was three or four years old at the time of the accident.

or on the front porch of the house.

2. USPS Carrier Grealish was acting within the scope of his employment at the United States Postal Service at all relevant times.

3. Grealish had completed a package pickup on 42nd Street NW in Winter Haven and was returning to his scheduled route. A power line was down at Avenue Q NW and 42nd Street, so Grealish diverted onto Avenue R.

4. Grealish was traveling eastbound on Avenue R at approximately 15 miles per hour, based on Regional Intelligent Mail Servers ("RIMS") data. RIMS data tracks USPS carriers' locations using GPS technology at one-minute intervals.

5. As the postal truck approached, Breyon ran from the Hendrix yard between two parked vehicles (a black pickup truck and a gold sedan) and into the street. Plaintiff ran after the boy and pushed him out of the way of the postal truck, saving Breyon from being hit, but being hit himself.

6. The Hendrix property was bordered on the left side by a fence with tall bushes next to it.[2] The fence and bushes obstructed the view into the Hendrix yard for eastbound drivers approaching the Hendrix property.[3]

7. A black pickup truck and gold sedan were parked in the Hendrix driveway.[4] The pickup truck was parked in the Hendrix driveway, 5-6 feet from the edge of

---

[2] Joint Exhibit 8, page 20 shows the fence and bushes.
[3] Joint Exhibit 8, page 21 shows the view of the Hendrix property as seen by an oncoming eastbound driver.
[4] Joint Exhibit 8, page 13 shows the placement of the vehicles on the Hendrix property.

3

Avenue R. Breyon was shorter than the pickup truck. Grealish could not have seen Breyon running from the yard until Breyon had passed the bed of the pickup truck.

8. A gold sedan was parked in the Hendrix yard, parallel to Avenue R. The fence, bushes, pickup truck, and gold sedan would have obstructed an eastbound driver's view into the Hendrix yard as the driver approached. However, an eastbound driver's view of Avenue R, itself, was not obstructed.

9. Grealish was unable to avoid hitting Plaintiff, who was running after Breyon, who had darted into the street. The postal truck hit Plaintiff's left side, and Plaintiff rolled up onto the windshield.

10. The postal truck came to rest approximately eleven feet from where the impact occurred.

11. Eyewitness Brandkisha Roundtree, Breyon's mother, testified that her son had run into the road. Ms. Roundtree did not see a phone in Grealish's hand while he was driving.

12. Ariana Bradshaw did not testify at trial, but the parties stipulated to the admission of her deposition into evidence. Ms. Bradshaw testified that she saw Breyon run into the road and Plaintiff run after him to keep the child from being hit. Ms. Bradshaw did not see a phone in Carrier Grealish's hand while he was driving.

13. Deputy Edwin Alexander of the Polk County Sheriff's Office responded to the scene and remained for approximately two hours. Deputy Alexander spoke with Plaintiff, Ariana Bradshaw, and Brandkisha Roundtree. Deputy Alexander concluded that based on what he had observed at the accident scene, Grealish was not distracted or speeding at the time of the accident.

**Plaintiff's Statements to Medical Providers**

14. Polk County EMS transported Plaintiff by ambulance from the accident scene to Lakeland Regional Medical Center to receive medical care.

15. Polk County EMS records state the following:

    The patient states that his nephew was on the street and was about to get struck by the post office vehicle. The patient states he ran and pushed his nephew out of the path of the post office vehicle[,] but was struck by the post office vehicle instead.

    (Joint Exhibit 4, p 5).

16. Plaintiff's records from Lakeland Regional Medical Center include the following:

    25 year old transgender female was struck by a mail truck approximately three hours ago. Was walking with her nephew, who ran into traffic. As she was attempting to sweep him out of the way, she was struck on the left side by the truck at an unkown [sic] speed.

    (Joint Exhibit 2, p. 32).

17. After his discharge from Lakeland Regional Medical Center, Plaintiff sought no further medical care related to the accident until April of 2017, at which point

5

he began chiropractic treatment.

18. Plaintiff provided a handwritten statement to his chiropractor at Spine & Injury Associates, which reads in part:

> My nephew was going cross the street and I spotted the mailman coming at a fast speed and ran to the road with my left hand out to catch his attention to stop but soon as I pushed my nephew out the way I got hit by the mail truck. The mail man was on his phone.

(Joint Exhibit 6, p. 161).

**Credibility of Witnesses**

19. The evidence before the Court is disputed regarding whether Breyon ran from the yard and darted into the street in front of Grealish's oncoming postal truck or whether Plaintiff and Breyon walked together across the street after seeing the postal truck three houses away. The evidence is also disputed as to whether Grealish was speeding and distracted by his cell phone immediately prior to the accident. As such, the Court must make credibility determinations regarding the witnesses' testimony.

20. Plaintiff testified at his deposition that his nephew did not dart into the road before the accident. Instead, he claimed that he and his nephew were speed-walking across the road side-by-side when the postal truck sped towards them from three houses down the road.

21. At trial, Plaintiff testified that his nephew was jogging across the street and he was jogging behind the child. Plaintiff testified that the postal truck sped toward

them from four houses down the road, where Grealish had just dropped off a package to an older female neighbor. On cross-examination, Plaintiff stated that the postal truck was three houses away.

22. Plaintiff admitted at trial that he has prior felony convictions. He also admitted that he was convicted of a misdemeanor under Florida Statute § 901.36(1) of giving a false name or identification to law enforcement.

23. Plaintiff's version of the events has changed several times,[5] and it conflicts with other eyewitness testimony. For example, Brandkisha Roundtree (Breyon's mother) testified that Breyon took off running from the yard into the street and that Plaintiff was running behind Breyon, trying to catch Breyon before he entered the street. William Hendrix's (Plaintiff's father) testimony was consistent with Roundtree's testimony. William Hendrix testified that Breyon ran into the street and that Roundtree yelled to Plaintiff to stop Breyon. Likewise, Ariana Bradshaw's (Plaintiff's niece) testimony was consistent with Roundtree and William Hendrix's testimony, as Bradshaw testified via deposition that Breyon was playing in the yard and then he ran into the street,

---

[5] For example, during his trial testimony, Plaintiff stated that he entered the road when the postal truck was four houses away, and he later changed his testimony to the postal truck being three houses away. Plaintiff stated that he was walking across the street with Breyon, and later he stated that he was jogging across the street with Breyon. Plaintiff also gave varying accounts of what had occurred to his medical providers. Finally, in his September 2018 Claim submitted to the Government, Plaintiff stated that he saw Breyon in the street in the path of the postal truck and that he pushed Breyon out of the way. (Joint Ex. 7).

7

with Plaintiff running after him. (Doc. No. 28-9, depo. p. 6-10). Therefore, the Court finds Plaintiff's testimony on this issue not credible. In addition, the Court has considered Plaintiff's testimony with more caution considering his felony convictions and conviction for dishonesty. Finally, Plaintiff's behavior at trial was bizarre in that, among other things, he threatened to leave several times, even when he was on the stand being examined by his own attorney.

24. The Court, over Defendant's objection, has also considered the deposition testimony of Xiomara Torres (a neighbor living across the street) who claimed to have witnessed the accident. She gave conflicting and confusing deposition testimony on what she saw. The Court finds that Torres' testimony is not credible, as her testimony has several inconsistencies. For example, Torres states that she was on her porch on her cell phone with her sister when Grealish drove by and delivered her mail. (Doc. No. 28-14, depo. p. 9). Torres states that she walked down her driveway, retrieved her mail, and then walked back towards her house, stopping to lean on a red car in her driveway while still talking on her cell phone. (Doc. No. 28-14, depo. p. 10). Torres states that she was facing her house until Yvonne Hendrix called out to her, and she turned around to wave at Ms. Hendrix and saw Plaintiff get hit. (Doc. No. 28-14, depo. p. 21-22). However, Torres' testimony conflicts with Yvonne Hendrix's trial testimony that she was inside her house in the bathroom prior to the accident and

did not come outside until she heard the commotion after the accident. Torres' testimony is also inconsistent to the extent that she testified that she was on the phone with her sister at the time of the accident, but she also stated that when she saw the accident, she screamed for one of her kids to get her phone. (Doc. No. 28-14, depo. p. 10, 22, 23).

**Expert Testimony and Other Testimony and Evidence**

25. Plaintiff did not provide any expert testimony at trial.

26. Defendant called Dr. William Greenberg as a medical expert. Dr. Greenberg opined that Plaintiff suffered no permanent injury from this accident. Dr. Greenberg also opined that any injuries Plaintiff suffered in the accident would have resolved after 4 to 6 weeks, so any medical care that Plaintiff received after that time was unrelated to the accident.

27. Defendant also called Justin Morgan, Ph.D., an expert in human factors and accident reconstruction, to analyze the collision. Dr. Morgan testified that given the limited visibility into the Hendrix yard (due to the fence, bushes, and black pickup truck) and the estimated speed at which Plaintiff was running to catch Breyon, Grealish would have had approximately 1.5 seconds to perceive Plaintiff prior to the impact. Dr. Morgan calculated this based on the distance from where Plaintiff could be seen by Grealish—the distance between the beginning of the bed of the black pickup truck in the driveway to the center of

9

the street where the impact occurred, which is a total visible distance of 20 feet. Dr. Morgan then estimated the running speed for Plaintiff based on his gender and age and determined that Plaintiff would have been visible to Grealish for approximately 1.5 seconds as Plaintiff ran through the visible part of the yard to the center of the street where he was hit. Dr. Morgan then testified that the fastest he would expect a driver to perceive someone entering the road laterally and then brake to avoid impact would be approximately 1.5 seconds. Based on 1.5 seconds of perception time, a normally attentive driver would be expected to begin braking at impact in this scenario. Thus, Dr. Morgan opined that by the time that Plaintiff was visible to Grealish, Grealish did not have any time to react and brake to avoid hitting Plaintiff.

28. Dr. Morgan also opined that a reasonable pedestrian would not have entered the street when the gap in traffic was less than 2 seconds. Stated differently, the postal truck was less than 2 seconds away when Plaintiff ran into the street after Breyon, and a reasonable pedestrian that is not chasing a small child running into the street would not enter the street when a vehicle is less than 2 seconds away from the pedestrian's path. Instead, Dr. Morgan opined that in general, a reasonable pedestrian would not enter the street with less than a 5 second gap in traffic. Because Plaintiff was chasing Breyon into the street to save him from getting hit by the oncoming postal truck, Plaintiff entered the

street when the postal truck was less than 2 seconds away.

29. The testimony before the Court is that the postal truck came to rest between 4 feet and 11 feet from the point of impact.[6] The farther the distance that the postal truck travelled after impact, the faster the postal truck was going. Dr. Morgan used the 11-foot estimate of the distance that the postal truck travelled and applied a braking rate of .7 g-force (which represents hard braking) to calculate that Grealish had been driving 15.2 miles per hour prior to the impact.[7]

30. Dr. Morgan opined that if Grealish had been speeding, he would have required more than approximately 11 feet of stopping distance. If Grealish had been distracted, he would have required more than 11 feet of stopping distance. If Grealish had been both speeding and distracted, he would have required even more stopping distance than either condition individually.

31. Brian Cox from the USPS testified that the USPS tracks the locations of its postal carriers. Specifically, postal carriers carry a scanner that uses GPS technology to collect RIMS data. The RIMS data shows the geographic

---

[6] Plaintiff testified during his deposition that he estimated that the postal truck came to rest 4 to 5 feet from the place of impact. Deputy Edwin Alexander (the police deputy that responded to the accident) testified that the postal truck came to rest approximately 10 feet from where the impact occurred.

[7] Had Dr. Morgan used a smaller estimate of the distance that the postal truck travelled after the impact (such as that given by Plaintiff), the calculated speed of the postal truck would have been lower.

location of each postal carrier's scanner, and the data is collected approximately every 60 seconds. This technology allows the USPS to determine, among other things, how fast a postal carrier is driving. According to the RIMS data for Grealish, he was driving approximately 15 miles per hour at the time of the accident. Thus, the RIMS data is consistent with Dr. Morgan's independent calculation of the speed at which Grealish was driving.

**Factual Disputes**

32. The evidence before the Court that Grealish was driving approximately 15 miles per hour at the time of the accident is disputed by the eyewitnesses. Plaintiff testified during the trial that the postal truck was going at "a good speed" and that Grealish was "speeding." Roundtree testified that Grealish was driving 45 to 50 miles per hour and then later testified that Grealish was going over 35 miles per hour. Torres, whose deposition testimony the Court finds not credible, stated that Grealish was driving 40 to 45 miles per hour. (Doc. No. 28-14, depo. p. 12). Likewise, Bradshaw testified in her deposition that Grealish was driving "kind of fast." (Doc. No. 28-9, depo. p. 9).

33. The Court finds that the testimony of these eyewitnesses regarding Grealish's speed is not credible.[8] Dr. Morgan opined that if Grealish had been driving 40

---

[8] Other non-credible evidence regarding Grealish's speed includes William Hendrix's and Torres' testimony that they saw skid marks after the accident. (Doc. No. 28-14, depo. p. 15). However, Deputy Alexander testified that he did not see any skid marks at the scene of the

12

miles per hour, the postal truck would have travelled 164 feet after the point of impact. The evidence before the Court is that the postal truck travelled, at most, 11 feet after impact. Furthermore, the speed estimates produced by the RIMS data and as testified to by Dr. Morgan are based on science, whereas the estimates given by the eyewitnesses can be characterized as unreliable guesses by witnesses related to Plaintiff. Therefore, the Court finds that the more credible evidence shows that Grealish was not speeding at the time of the accident, and in fact, he was driving approximately 15 miles per hour, well below the posted 25 mile per hour speed limit.[9]

34. Plaintiff also contends that Grealish was distracted by a cell phone at the time of the accident, and the distraction was the true cause of the accident. Roundtree and Yvonne Hendricks (Plaintiff's mom) testified that they saw Grealish with a cell phone in his hand when he got out of the postal truck after hitting Plaintiff. However, the fact that Grealish had his cell phone in his hand after the accident is not evidence that Grealish was using his cell phone or was otherwise distracted by it at the time of the accident.

---

accident. The Court finds Deputy Alexander's testimony regarding the existence of skid marks more credible than William Hendrix's and Torres' testimony.

[9] The Court notes that Dr. Morgan also opined that had the accident occurred the way that Plaintiff described—that Plaintiff entered the street when the postal truck was three houses (172 feet) away—Grealish would have to have been driving at a speed of 78 miles per hour in order to hit Plaintiff when he reached the center of the street. Further, Dr. Morgan testified that had Grealish been driving at 78 miles per hour, his postal truck would have come to rest almost 300 feet past the place of impact.

35. Accordingly, the Court makes the following findings of fact: Plaintiff ran into the street in front of the oncoming postal truck, making the accident unavoidable. An attentive driver in Grealish's position would not have been able to avoid the accident. Further, the Court finds that there is no credible evidence that Grealish was speeding or distracted by his cell phone at the time of the accident.

## CONCLUSIONS OF LAW

Based upon the foregoing findings of fact, the Court reaches the following conclusions of law:

36. Plaintiff filed this tort action against the United States pursuant to the FTCA (28 U.S.C. §§ 1346(b)(1), 2671-2680). Under the FTCA, the United States has waived sovereign immunity in limited circumstances for personal injury caused by the negligent act of a federal employee while acting within the scope of his employment. 28 U.S.C. § 1346(b)(1).

37. Plaintiff exhausted his administrative remedies and then timely filed this action.

38. The choice of law for an FTCA action is the law of the place where the tort occurred. F.D.I.C. v. Meyer, 510 U.S. 471, 477-78 (1994). Florida tort law applies here, because the accident occurred in Florida.

39. To prevail in a Florida negligence action, a plaintiff must prove that: (1) the defendant owed a duty or obligation recognized by the law to the plaintiff; (2) the defendant breached that duty; (3) there is a reasonably close causal connection between the breach and resulting injury; and (4) there is actual harm to the plaintiff.  Williams v. Davis, 974 So. 2d 1052, 1056 (Fla. 2007).

40. "The standard of care applicable to negligence actions under Florida law is one of reasonable care; that which a reasonably careful, prudent, and cautious person would use under the circumstances."  Hensley v. U.S., 728 F. Supp. 716, 721 (S.D. Fla.1989) (citations omitted).

41. Florida drivers have a duty to "exercise due care to avoid colliding with any pedestrian . . . and give warning when necessary and exercise proper precaution upon observing any child or any obviously confused or incapacitated person."  Fla. Stat. § 316.130(15).

42. "A finding of breach of a duty of care on the part of a defendant . . . does not establish a right to recovery by the plaintiff unless the plaintiff can also show causation and damages."  Giter v. U.S., 2010 WL 375929, at *6 (M.D. Fla. Jan. 25, 2010) (citations omitted).

43. "In negligence actions[,] Florida courts follow the more likely than not standard of causation and require proof that the negligence probably caused the plaintiff's injury."  Gooding v. University Hosp. Bldg., Inc., 445 So.2d 1015, 1018 (Fla.

1984) (citations omitted).

44. Plaintiff "must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of [Grealish] was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." Gooding, 445 So. 2d at 1018 (quoting *Prosser, Law of Torts* § 41 (4th Ed.1971)).

45. The parties agree that Defendant, through USPS Carrier Grealish, owed a duty to Plaintiff to operate his postal truck in a reasonably safe manner. However, the parties disagree as to whether Defendant, through Grealish, breached that duty. The Court finds that Plaintiff has not proven by a preponderance of the evidence that Grealish breached that duty.

46. The evidence shows that Grealish was driving at a slow speed, approximately 15 miles per hour, well under the 25 miles per hour speed limit. Furthermore, the credible testimony and other evidence shows that Plaintiff's young nephew, Breyon, darted out into the road, and Plaintiff ran into the road after him. Grealish was not able to stop his vehicle in time to avoid hitting Plaintiff. As such, Plaintiff's negligence claim fails.

47. The Court rejects Plaintiff's argument that Grealish should have been driving even slower than 15 miles per hour because of the visual obstructions into the Hendrix yard. There was no evidence before the Court that Grealish's view of the road was in any way obstructed, and Grealish was not required to anticipate a pedestrian running across the street in front him. See, e.g., Preger v. Gomory, 55 So. 2d 541, 544 (Fla. 1951) (stating that "[t]he operator of an automobile is not chargeable with notice that pedestrians may be darting out in front of or behind parked automobiles" into the road); Bell v. A. A. Holiday Rent-A-Car, Inc., 304 So. 2d 535, 536 (Fla. 3d DCA 1974) (stating that "[a] motorist is not an insurer of the safety of a pedestrian who thrusts himself into the vehicle's pathway"); see also Fla. Stat. § 316.130(10) (stating that "[e]very pedestrian crossing a roadway at any point other than within a marked crosswalk . . . shall yield the right-of-way to all vehicles upon the roadway").

48. There is no credible testimony or other evidence proving that Grealish was looking at his cell phone immediately before the accident, or that Gealish was distracted or that the distraction was the cause of the accident.

49. Even if Grealish had been distracted by his cell phone, the evidence before the Court shows that the accident was unavoidable. As the Court has already found, an attentive driver would not have been able to avoid the accident, given that Plaintiff ran into the street right in front of the oncoming postal truck.

50. Finally, because the Court has found that Plaintiff has not proven causation, it does not reach the issue of damages.

51. The Court's verdict is for Defendant United States of America.

## CONCLUSION

Accordingly, it is ORDERED AND ADJUDGED that the Court finds in favor of Defendant on Plaintiff's claim. The Clerk is directed to enter judgment in favor of Defendant and to close this case.

**DONE** and **ORDERED** at Tampa, Florida, this 19th day of May, 2021.

_____
SUSAN C. BUCKLEW
United States District Judge

Copies to:
All Parties & Counsel of Record